## 9928

### BANK OF PAGELAND v. WILLIS.

#### (96 S. E. 159.)

1. SALES—CONSTRUCTION.—Where buyer of an interest in crops agrees to assume certain obligations of seller, the fact that the recital of such consideration is preceded by words "upon following terms and conditions" does not make such agreements conditions precedent making sale conditional and not absolute.

2. LANDLORD AND TENANT—SALE BY CROPPER TO LANDLORD.—A sale by a cropper of his interest in the crops to his landlord does not constitute abandonment of such interest, but is a valid sale thereof.

Before DeVORE, J., Marlboro, Fall term, 1918. Affirmed.

Action by the Bank of Pageland against J. E. Willis. Judgment for plaintiff, and defendant appeals.

The following is the decree of the Circuit Court:

This was an action brought by the Bank of Pageland as an assignee of D. H. McGregor & Company for an accounting for half of a crop belonging to W. L. Pate, who was a share cropper under the laws of North Carolina in making a crop in Anson county, North Carolina. Pate gave a mortgage for twelve hundred and fifty dollars on his share of the crop to D. H. McGregor & Co., and they assigned it to the Bank of Pageland, who is now the owner and holder of it. J. E. Willis was the landlord, but on June 1, 1916, he sold out his interest absolutely to T. W. Gregory and put him in position of being landlord as fully as if he were the landowner.

T. W. Gregory was the manager of D. H. McGregor & Co., and on June 15th he assigned this mortgage to the Bank of Pageland. On August 24th Gregory bought the crop of Pate absolutely and agreed to pay the mortgage held by the bank in consideration of Pate's turning over the crop to him. Subsequently, Gregory, being in a failing condition, and D. H. McGregor & Company being in bankruptcy, the defendant, J. E. Willis, who had been paid a tract of land on the sale to Gregory on June 1st, and recited that he had been paid five hundred dollars more, in order to collect the balance that was due him on the trade with Gregory, took an agreement with Gregory that he was to have the right to enter and gather the crops until he got ninety bales of cotton. This was done with the understanding that it did not interfere with the rights of the Bank of Pageland, and indeed a contract between Gregory and Willis could not interfere.

Willis gathered all of the crop and kept both his half and Pate's half, refusing to carry out Gregory's contract to pay over Pate's half to the Bank of Pageland, claimed a forfeiture on the ground that Pate had abandoned his crop, and when called to an accounting sets up numerous charges against the crop, absorbing practically the whole of it.

Under the laws of North Carolina share cropper had the right to mortgage his share of the crop and he does not forfeit his right in the crop unless he abandons the crop without legal excuse and without the consent of the landowner and before the crop is matured. Pate not only had the consent of the landlord, but the landlord himself bought him out and agreed to gather the crop in consideration of its being turned over to him and pay the bank's debt out of Pate's half. Willis stands under an agreement with Gregory and is bound by Gregory's agreement, and, therefore, he was bound to gather the crop and deliver half of it to the bank. He had made no advances on the crop, had no lien on it and no right to take it. The question with me is whether he should be reimbursed for the expense of gathering and marketing the crop.

After a good deal of hesitation I have reached the conclusion that he is entitled to be allowed the actual expense of gathering and marketing the crop and that he has received of Pate's half $810.41 of cotton; that his expenses were $483.04, that he is, therefore, under obligation to pay the bank $327.37 with interest from December 12, 1911, to December 12, 1916, $114.55, making $441.92; and it is, therefore, ordered, adjudged and decreed that plaintiff recover of the defendant said amount and costs.

*Mr. J. W. LeGrand,* for appellant, cites: *Sec. 1754 of the statute law of North Carolina:* 93 N. C. 47; 126 N. C. 136; 88 N. C. 101; 93 N. C. 43; 139 N. C. 326.

*Messrs. Stevenson, Stevenson & Prince,* for respondent, cite: *As to the right in North Carolina of a tenant to sell his crop:* Revised Statutes of North Carolina, sections 1993-94 and 98; 136 N. C. 280; 104 N. C. 229; sec. 2052 of the Revised Statutes; 78 N. C. 100; 93 N. C. 87; 120 N. C. 75; 90 N. C. —; 98 N. C. 214; 139 N. C. 526.

March 20, 1918.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

The exceptions present three assignments of error which we consider in the order of importance given them by appellant in argument.

Of the two grounds chiefly relied upon, the second is somewhat dependent upon the first. They are: (1) Error in holding that, under the contract of June 1, 1911, there was an absolute sale by defendant of all his interest in the crops of Gregory, so that the latter became Pate's landlord; and (2) in not holding that the sale, on August 24th, by Pate of his interest in his crop to Gregory amounted to an abandonment of it, whereby it was forfeited to defendant.

Appellant contends that the contract of June 1st made defendant's sale to Gregory conditional, and, as the conditions were not performed, defendant's original rights as landlord were not affected by it. There is nothing in the contract which gives any color to this contention, except the words which immediately follow the conveyance of all defendant's interest in the crops of Gregory, to wit, "upon the following terms and conditions." Following these words the contract sets forth in detail the several things that Gregory agreed to do, in consideration of the conveyance. They are all stated as agreements and promises, and not as conditions, the nonperformance of which would defeat or annul the sale. Immediately following the words, "upon the following terms and conditions," the contract proceeds: "The said T. W. Gregory * * * in consideration of the conveyance aforesaid, hereby promises and agrees to pay the said J. E. Wilis" $500, receipt of which is acknowledged, and to pay A. L. Calhoun, Jr., $3,906.08 on October 15th, and $2,961.71 on November 1, 1911, being the amount due him by Willis for fertilizer, and to save Willis harmless from liability therefor, and to apply the proceeds of the crops to the payment thereof, and that nothing therein contained shall be construed to deprive said

Calhoun or Willis of his right to have said crops applied to said debts which are declared to be a lien on said crops until paid; and Gregory further agrees to make advances to the tenants and croppers to enable them to cultivate and harvest the crops, without liability on the part of Willis on contracts theretofore made by him with them for advancements, which contracts Gregory assumed; and it is further agreed that Gregory "shall collect from the tenants and croppers aforesaid all crops raised by them or so much as may be necessary to pay him for advances furnished to make said crops and shall have all the rights, powers and privileges which the said J. E. Willis has the authority to confer upon him and the said J. E. Willis does hereby assign, transfer and set over to the said T. W. Gregory, his heirs and assigns all of his rights, title, claims and interest in and to all of said crops subject to the provisions hereinbefore contained.'" The other provisions are not pertinent to this contention.

It shall be seen at a glance that, even if the use of the word "conditions" could be held to import that the subsequent provisions should be held to be conditions at all, in any legal sense of the word, they would be conditions subsequent, and not conditions precedent, such as the nonperformance of which would annul or defeat the sale. The Court was clearly right in holding that the sale was absolute, and that by the terms thereof Gregory became Pate's landlord.

It follows that the sale by Pate, on August 24th, of his interest in his crop to Gregory was valid and binding, not only upon Gregory, but upon defendant, when he afterwards, on October 20th, made another contract with Gregory about the crop. The contention that the sale amounted to an abandonment of the crop is untenable upon any theory of law, equity, or justice. It would be contradictory in terms to say that a sale by a cropper of his interest in his crop to his landlord is an abandonment of it. The sale implies assertion of ownership, the opposite of

abandonment, and the purchase implies recognition of the ownership asserted.

These conclusions are in accord with the law of North Carolina, under which the rights of the parties must be determined.

The only other assignment of error is as to the amount for which judgment was given against defendant, as to which examination of the evidence shows there was no error.

Judgment affirmed.